**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:11-cv-00019-JRG |
| Plaintiff, | |
| v. | |
| ANALOG DEVICES, INC., ET AL., | |
| Defendants. | **[JURY TRIAL DEMANDED]** |
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-153-JRG |
| Plaintiff, | |
| v. | |
| CONEXANT SYSTEMS, INC., | **[JURY TRIAL DEMANDED]** |
| Defendant. | |
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-154-JRG |
| Plaintiff, | |
| v. | |
| CREATIVE TECHNOLOGY LTD., ZIILABS PTE LTD., AND CREATIVE LABS, INC. | **[JURY TRIAL DEMANDED]** |
| Defendants. | |
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-155-JRG |
| Plaintiff, | |
| v. | |
| MARVELL SEMICONDUCTOR, INC., | **[JURY TRIAL DEMANDED]** |
| Defendant. | |

| | |
|---|---|
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-156-JRG |
| Plaintiff, | |
| v. | |
| MINDSPEED TECHNOLOGIES, INC., | **[JURY TRIAL DEMANDED]** |
| Defendant. | |
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-158-JRG |
| Plaintiff, | |
| v. | |
| XILINX, INC., | **[JURY TRIAL DEMANDED]** |
| Defendant. | |

## <u>DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)</u>

## **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT .......................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 3

      A.  The Center of Gravity of this Case is Now in California. ............................... 3

      B.  Defendants and ARM Are California Corporations and The Bulk Of Known Evidence
          Pertaining to the Accused Products is Located in California. ......................... 4

      C.  APT Has No Meaningful Presence in the Eastern District of Texas. ............................. 5

III.  ARGUMENT ................................................................................................... 6

      A.  Transfer Pursuant to 28 U.S.C. § 1404(a) is Proper. ..................................... 6

      B.  The Relevant Transfer Factors Heavily Favor Transferring This Case To The Northern
          District of California. ............................................................................... 7

          1.  This Case Could Have Been Filed In The Northern District of California. .......... 8

          2.  The Relevant Private Interest Factors Heavily Weigh In Favor Of Transfer. ....... 9

              a.  The Convenience of Witnesses and Parties Strongly Favors Transfer. ........... 9

              b.  The Sources of Proof Are in the Northern District of California. ................. 12

              c.  The Availability Of Compulsory Process to Secure the Attendance of
                  Witnesses Strongly Favors Transfer. ............................................... 13

              d.  Other Practical Problems That Make Trial Easy, Expeditious, and
                  Inexpensive is a Neutral Factor. .................................................... 14

          3.  The Relevant Public Interest Factors Heavily Weigh In Favor Of Transfer. ...... 14

              a.  The Local Interest In Having Localized Interests Decided at Home Strongly
                  Weighs in Favor of Transfer. ....................................................... 14

              b.  Considerations of Court Congestion Favor Transfer. .................................. 15

IV.   CONCLUSION ............................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arete Power, Inc. v. Beacon Power Corp.*, No C 07-5167, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008) ................................................................................................................ 11

*Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546 (E.D. Tex. 2009) ........... 8

*Balthaser Online, Inc. v. Kimberly-Clark Corp.*, 2:09-cv-188, 2011 WL 1526964 (E.D. Tex. Apr. 20, 2011) ........................................................................................................ 7

*Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810 (N.D. Cal. 2008) .............................. 13, 14

*In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010) ........................................................ passim

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ......................................................... passim

*In re Hoffmann-LaRoche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ............................................ 14, 15

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) ............................................................. 6, 9

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009) .................................................................. 3, 7

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ............................................... 10, 13, 15

*In re Verizon Bus. Network Serv., Inc.*, 635 F.3d 559 (Fed. Cir. 2011) ........................................ 10

*In re Volkswagen of Am., Inc.* (*In re Volkswagen II*), 545 F.3d 304 (5th Cir. 2008) ..................... 7

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) ............................................... passim

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000)…………………………9

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ...................................................................................... 3, 7, 15

*Optimum Power Solutions LLC v. Apple Inc.*, 794 F. Supp. 2d 696 (E.D. Tex. 2011) ........ 2, 3, 11

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ................................................................... 6

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ................................................................................... 6

*VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990)...................... 8

*Voxpath RS LLC v. LG Elecs. U.S.A., Inc.*, No. 2:10-cv-160-JRG, 2012 WL 194370 (E.D. Tex.

   Jan. 23, 2012)................................................................................................................ 14

*Wireless Recognition Techs. v. A9.com*, 2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. Feb.

   15, 2012) ......................................................................................................................... 3

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants-Intervenors ARM Ltd. and ARM, Inc. (collectively, "ARM") and Defendants

Marvell Semiconductor, Inc. ("Marvell"), Mindspeed Technologies, Inc. ("Mindspeed"), Zoran

Corporation ("Zoran"), Creative Labs Inc. ("Creative"), Xilinx. Inc. ("Xilinx"), and Conexant

Systems, Inc. ("Conexant") (collectively, "Defendants")[1] move to transfer this action to the

United States District Court for the Northern District of California pursuant to 28 U.S.C. §

1404(a).  There are compelling reasons to transfer this case:

- Each and every Defendant is located in or near the Northern District of California.  By

  contrast, no Defendant has any meaningful presence in this District.  Notably, the Federal

  Circuit has recently emphasized that "the combination of multiple parties being

  headquartered in or near the transferee venue and no party or witness in the plaintiffs

  chosen forum" is an "important consideration" that "clearly favors transfer."  *In re Acer*

  *Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).

- The vast bulk of evidence relevant to the accused products is located in or near the

  Northern District.  *E.g.*, Ex. A, Jiang Decl. ¶ 6; Ex. B, James Decl. ¶ 6; Ex. C, Gladden

  Decl. ¶ 6; Ex. D, Swerdon Decl. ¶ 6; Ex. E, Gallagher Decl. ¶ 7; Ex. F, Kind Decl. ¶ 8;

  *see In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("'In patent infringement

  cases, the bulk of the relevant evidence usually comes from the accused infringer.

  Consequently, the place where the defendant's documents are kept weighs in favor of

  transfer to that location'") (citations omitted).

- ARM  – whose technology is at the heart of APT's infringement assertions – has its

---

[1] Defendants and ARM are simultaneously filing this same motion in Case Nos. 2:12-cv-153, 2:12-cv-154, 2:12-cv-155, 2:12-cv-156, and 2:12-cv-158.  These cases involve the same ARM processor core technology that is at issue in the 2:11:cv-19 litigation.

Northern American headquarters in San Jose in the Northern District.  Ex. G at 1.

- Acacia Research Corporation ("Acacia"), the well-known non-practicing entity who formed APT for purposes of asserting these patents, is based in Newport Beach, California.  Significantly, this District has repeatedly found Acacia's presence in California to be an important factor in the transfer context in cases involving its subsidiaries.  *See Optimum Power Solutions LLC v. Apple Inc.*, 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011) (reasoning that "California would be more convenient for Acacia" in granting transfer to the Northern District of California).

- The prior art and associated witnesses are predominantly centered in the Northern District.  Indeed, at least **33** of the prior art references identified by Defendants in their Invalidity Contentions have inventors or authors located in the Northern District.   Ex. H. Additionally, one of the key prior art devices was developed by MIPS Technologies, Inc. ("MIPS").  MIPS has its headquarters in the Northern District.  Ex. I at 1.

- At least one inventor is located in the Northern District.  Ex. J at 1.

- At least one prosecuting attorney is located in the Northern District.  Ex. S. at 1.

As the above facts show, the center of gravity of this case is in the Northern District.

Against this formidable backdrop, APT's sole purported connection to Texas is that it became organized under Texas law a mere **5 days** before acquiring the patents-in-suit and purportedly operates out of a "virtual" office in Frisco that is also the apparent headquarters of at least **43** other entities.  This is the exact type of attempt to manipulate venue that the Federal Circuit rejects.  *E.g.*, *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (noting that recent presence in Texas was "recent, ephemeral, and an artifact of litigation" and that "[t]his [was] a classic case where the plaintiff [was] attempting to game the system by artificially

2

seeking to establish venue").  Critically, this Court has ordered transfer to the Northern District on at least three prior occasions when presented with virtually identical facts.  *E.g.*, *Wireless Recognition Techs. v. A9.com*, 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) (concluding that the Northern District is clearly a more convenient forum despite the Acacia subsidiary's minimal connection to the Eastern District); *Optimum Power*, 794 F. Supp. 2d at 702 (ordering transfer and noting that Acacia subsidiary "does not appear, and has not claimed, to have any business in this District besides pursuing this litigation"); *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (finding that the Northern District was "clearly more convenient" despite the Acacia subsidiary's "small and fairly recent operations in Texas").

Because all of the relevant evidence and witnesses are located in California and next to no evidence or witnesses are located in this District, Defendants and ARM respectfully request that the Court transfer this case to the Northern District of California.  *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer").

## II.   FACTUAL BACKGROUND

### A.   The Center of Gravity of this Case is Now in California.

In January 2011, APT filed its original complaint against nine separate defendants dispersed across the country in the 2:11-cv-19 litigation.  Five of those defendants, Cirrus Logic, Inc.; Netronome Systems, Inc.; Micrel, Inc.; Digi International, Inc.; and Analog Devices, Inc. have now been dismissed.  Dkt. Nos. 19, 21, 39, 54, and 67, respectively.  In March 2012, APT filed five additional actions against either the same defendants or asserting the same patent(s) against new defendants.  Case Nos. 2:12-cv-153, 2:12-cv-154, 2:12-cv-155, 2:12-cv-156, and

3

2:12-cv-158.  With the dismissal of the previous defendants and the addition of California

defendants from the new cases, the center of gravity for these cases has now shifted to

California, where APT's parent corporation and all remaining defendants are located.

**B.      Defendants and ARM Are California Corporations and The Bulk Of Known Evidence Pertaining to the Accused Products is Located in California.**

Defendants are recognized leaders in computing technologies for a broad range of

products.  In particular, Defendants design and develop high-performance integrated circuits,

including programmable devices, that are used in various electronic devices and systems.  In this

action, APT asserts that one or more claims of its patents-in-suit are infringed by various

programmable devices ("the accused products").  For the vast majority of the accused products,

APT relies exclusively on technology supplied by ARM in support of its infringement

allegations.  Am. Compl. ¶ 40.  ARM is a third party semiconductor and software design

company that supplies numerous companies, including Defendants, with processor designs that

these companies can then integrate into their chips.  The processor design supplied by ARM is

commonly referred to as the ARM "processor core."  In addition, some Defendants build their

own cores consistent with the Architecture Specification provided by ARM.

Defendants and ARM are California-based companies with no meaningful connections to

this District.  Indeed, Marvell, Xilinx, Creative, and Zoran have their United States headquarters

in the Northern District and collectively employ over 3500 people there.  Ex. A, Jiang Decl. ¶ 2;

Ex. B, James Decl. ¶ 2; Ex. C, Gladden Decl. ¶ 2; Ex. D, Swerdon Decl. ¶ 2.  Similarly, ARM is

a California corporation with its Northern American headquarters in San Jose.  Ex. G at 1.

Additionally, Mindspeed and Conexant have their principal offices in Newport Beach and

employ over 400 people in California.  Ex. E, Gallagher Decl. ¶ 2; Ex. F, Kind Decl. ¶ 2.

By contrast, neither Defendants nor ARM have any meaningful presence in this District.

4

Ex. A, Jiang Decl. ¶ 3; Ex. B, James Decl. ¶ 3; Ex. C, Gladden Decl. ¶ 3; Ex. D, Swerdon Decl. ¶ 3; Ex. E, Gallagher Decl. ¶ 3; Ex. F, Kind Decl. ¶ 4; Ex. K, Havens Decl. ¶¶ 4, 6.  Indeed, neither Defendants nor ARM have designed or developed any products in this District.  *Id.*  Moreover, there is no special concentration of sales of accused products in this District.  Ex. A, Jiang Decl. ¶ 8; Ex. B, James Decl. ¶ 8; Ex. C, Gladden Decl. ¶ 8; Ex. D, Swerdon Decl. ¶ 8; Ex. E, Gallagher Decl. ¶ 9; Ex. F, Kind Decl. ¶ 10.  Indeed, Defendants' sales of accused products in the Eastern District of Texas are no different than their sales of products nationwide.  *Id.*

Defendants' evidence and witnesses relevant to this litigation are concentrated in or near the Northern District of California.  The bulk of the known, available documents related to the accused products are located in or near Northern District.  Ex. A, Jiang Decl. ¶ 6; Ex. B, James Decl. ¶ 6; Ex. C, Gladden Decl. ¶ 6; Ex. D, Swerdon Decl. ¶ 6; Ex. E, Gallagher Decl. ¶ 7; Ex. F, Kind Decl. ¶ 8.  Moreover, witnesses with relevant knowledge concerning the development, technology, and marketing of the accused products are similarly located in or near the Northern District.  Ex. A, Jiang Decl. ¶¶ 5, 7; Ex. B, James Decl. ¶¶ 5, 7; Ex. C, Gladden Decl. ¶¶ 5, 7; Ex. D, Swerdon Decl. ¶ 7; Ex. E, Gallagher Decl. ¶¶ 5, 8; Ex. F, Kind Decl. ¶¶ 6, 9.

By contrast, after investigation, Defendants and ARM have not presently identified any documents or witnesses related to the accused products which are located in the Eastern District of Texas.  Ex. A, Jiang Decl. ¶ 9; Ex. B, James Decl. ¶ 9; Ex. C, Gladden Decl. ¶ 9; Ex. D, Swerdon Decl. ¶ 9; Ex. E, Gallagher Decl. ¶ 10; Ex. F, Kind Decl. ¶ 11.

### C.    <u>APT Has No Meaningful Presence in the Eastern District of Texas.</u>

APT is a non-practicing entity that was organized in this District just **5** days before it acquired two of the patents-in-suit.  Exs. L-N.  APT's only member is Acacia Patent Acquisition LLC—a subsidiary of Acacia Research Corporation.  Ex. L.  Acacia is a well known non-practicing entity with its principal offices in Newport Beach, California.  Ex. O.

APT's only connection with this District is a purported office at 6136 Frisco Square Blvd., Suite 400, Frisco, Texas 75034.  Am. Compl. ¶ 2 .  The office at this address, however, appears to belong to Regus, a well-known provider of "virtual office" locations and rental meeting rooms.  Ex. P.  APT is not listed as a tenant at that location, and does not appear in the building directory.  *Id.*  This same address also has been the alleged "principal place of business" of another Acacia subsidiary that has brought patent lawsuits in this District.  *Wireless Recognition Techs. v. A9.COM, Inc.*, 2:10-cv-364-JRG (E.D. Tex. Sept. 14, 2010), Compl. ¶ 2.

## III.   ARGUMENT

The overwhelming locus of this case is in the Northern District of California. Defendants' key documents and witnesses are located in the Northern District.  Third party witnesses are located in or near the Northern District.  The vast majority of the prior art is located in the Northern District.  The Northern District would be more convenient for Acacia. Simply stated, the Northern District is "the only convenient and fair venue in which to try this case."  *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011).

### A.   Transfer Pursuant to 28 U.S.C. § 1404(a) is Proper.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  This statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The purpose of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), *superseded by statute on other grounds as stated in Ross v. Colo. Outward Bound Sch. Inc.*, 822 F.2d 1524 (10th Cir. 1987).

"The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege [of choosing venue] under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen of Am., Inc.* (*In re Volkswagen II*), 545 F.3d 304, 313 (5th Cir. 2008) (*en banc*).  While plaintiffs have the privilege of filing their claims in any judicial division appropriate under the general venue statute, "§ 1404(a) tempers the effects of the exercise of this privilege" by allowing courts to transfer civil actions to a more convenient venue.  *Id.*  "A motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff."  *Nintendo*, 589 F.3d at 1197 (citations omitted).

### B.    The Relevant Transfer Factors Heavily Favor Transferring This Case To The Northern District of California.

The relevant factors strongly favor transfer to the Northern District of California.  The threshold question for a transfer motion is whether the action could have been brought in the proposed transferee district.  *E.g.*, *Network Prot.*, 2012 WL 194382, at *2; *Balthaser Online, Inc. v. Kimberly-Clark Corp.*, 2:09-cv-188, 2011 WL 1526964, at *2 (E.D. Tex. Apr. 20, 2011).

If the transferee district is proper, then the court must balance the private convenience interests of the litigants and the public interest in the fair and efficient administration of justice—i.e., the "private" and "public" interest factors.  *Nintendo*, 589 F.3d at 1197-98.  The four private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive."  *Id.*  The four public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of

law or in the application of foreign law." *Id.*

These factors uniformly favor transferring this case to the Northern District of California.

1.   This Case Could Have Been Filed In The Northern District of California.

The preliminary question under § 1404(a) is whether a civil action could have been brought in the destination venue. An action for patent infringement "may be brought in the judicial district where the defendant resides . . . ." 28 U.S.C. § 1400(b). A corporate entity is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). "Defendants need only present a prima facie case for personal jurisdiction and venue in the NDCA . . . ." *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 551 (E.D. Tex. 2009).

APT indisputably could have brought this action in the Northern District. Indeed, ARM, Marvell, Xilinx, Creative, and Zoran have their United States headquarters in the Northern District. Ex. A, Jiang Decl. ¶ 2; Ex. B, James Decl. ¶ 2; Ex. C, Gladden Decl. ¶ 2; Ex. D, Swerdon Decl. ¶ 2; Ex. G at 1. Thus, ARM, Marvell, Xilinx, Creative, and Zoran are subject to personal jurisdiction and venue in the Northern District. *See* 28 U.S.C. § 1400(b); 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("[V]enue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced").

Because ARM, Marvell, Xilinx, Creative, and Zoran are subject to personal jurisdiction and venue in the Northern District, venue is proper over Conexant and Mindspeed. *See* 28 U.S.C. § 1391(b)(1) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State."). Personal jurisdiction and venue are also appropriate over Mindspeed because Mindspeed maintains sales offices in

Santa Clara and has sold and is continuing to sell the accused products in substantial quantities in the Northern District.  Ex. F, Kind Decl. ¶¶ 3, 7.

Personal jurisdiction and venue are proper over Conexant because Conexant has several million dollars in sales in the Northern District, has two Vice Presidents of Worldwide Sales that oversaw millions of dollars of sales from the Northern District, and has a distributorship network including sales representatives in the Northern District.  Ex. E, Gallagher Decl. ¶ 6.  *See LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) ("Based on Hubbell's millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that Hubbell maintains 'continuous and systematic' contacts with Ohio").  Thus, this case could have been brought in the Northern District.

2.   <u>The Relevant Private Interest Factors Heavily Weigh In Favor Of Transfer.</u>

a.   **The Convenience of Witnesses and Parties Strongly Favors Transfer.**

The convenience of witnesses strongly favors transfer to the Northern District of California.  "'The convenience of the witnesses is probably the single most important factor in transfer analysis.'"  *Genentech*, 566 F.3d at 1343 (citations omitted).  This factor "clearly favors transfer" when a substantial number of witnesses reside in or close to the transferee forum and none reside in the transferor forum.  *E.g.*, *Acer*, 626 F.3d at 1255 ("A substantial number of party witnesses . . . reside in or close to the [transferee forum].  If all of these witnesses were required to travel to the [transferor forum], the parties would likely incur significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work . . . Thus, the witness convenience factor clearly favors transfer"); *Microsoft*, 630 F.3d at 1363 ("[Transfer] factors should conform to the fact that a significant number of witnesses and parties [are] actually located within the transferee venue and could be deposed and testify without significant

9

travel or expense, while no witness or party [is] located within the plaintiff's chosen forum").

Consistent with Federal Circuit and this Court's precedent, this factor strongly favors transfer because the available party witnesses are almost uniformly concentrated in or near the Northern District of California with none residing in the Eastern District of Texas.  Indeed, with respect to party witnesses, ARM, Marvell, Xilinx, Creative, and Zoran all have their United States headquarters in the Northern District of California.  Ex. A, Jiang Decl. ¶ 2; Ex. B, James Decl. ¶ 2; Ex. C, Gladden Decl. ¶ 2; Ex. D, Swerdon Decl. ¶ 2; Ex. G at 1.  The Marvell, Xilinx, Creative, and Zoran employees who might have knowledge of the devices identified by APT in its Complaint are located in the Northern District of California.  Ex. A, Jiang Decl. ¶¶ 5, 7; Ex. B, James Decl. ¶¶ 5, 7; Ex. C, Gladden Decl. ¶¶ 5, 7; Ex. D, Swerdon Decl. ¶ 7.

The Northern District is also far more convenient for Conexant and Mindspeed party witnesses.  The Conexant and Mindspeed employees likely to be witnesses in this case are located in Newport Beach.  Ex. E, Gallagher Decl. ¶¶ 5, 8; Ex. F, Kind Decl. ¶¶ 6, 9.  Travel from Newport Beach to this District would require a trip of about 1500 miles – over 1000 miles further than the distance to the Northern District.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (900-mile difference weighs "considerably" in favor of transfer).

Thus, transfer would be for the convenience of all parties' witnesses.  By contrast, maintaining this action in the Eastern District of Texas would require these witnesses to unnecessarily undergo the substantial cost and expense of travel.  *See In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) ("[M]aintaining trial in the Marshall Division would require witnesses to undergo the cost, time, and expense of  travel, which would be significantly reduced if this case was transferred to the Dallas Division").

This factor even more strongly favors transfer with respect to third-party witnesses.  The

following third party witnesses are located in the Northern District or within its subpoena power:

**Prior art**.  Numerous prior art witnesses are also located in the Northern District. Indeed, at least **33** of the prior art references identified by Defendants in their Invalidity Contentions have inventors or authors located in the Northern District.  Ex. H.  Additionally, one of primary invalidating pieces of prior art was designed by MIPS Technologies, Inc. ("MIPS"). MIPS has its principal place of business in the Northern District.  Ex. I at 1.

**Acacia.**  Acacia has substantial discoverable information concerning the chain of title of the patents-in-suit as well as the licensing and valuation of the patents-in-suit.  Because Acacia is based in Newport Beach, Defendants would be able to compel a witness at trial in the Northern District, but could not do so in EDTX.  Notably, this Court has already explicitly found that it would be more convenient for Acacia employees to testify in the Northern District than in this District.  *See Optimum Power*, 794 F. Supp. 2d at 702 (reasoning that "California would be more convenient for Acacia" in granting transfer to the Northern District).

**Inventor**.  At least one of the inventors of the patents-in-suit is located in the Northern District.  Ex. J at 1.  "Among the most significant witnesses on the infringement and anticipation issues are the inventor(s) . . . ."  *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167, 2008 WL 508477, at *7 (N.D. Cal. Feb. 22, 2008).

Against this backdrop, APT only makes two narrow arguments, both of which have been repeatedly rejected by the Federal Circuit.  First, APT's attempts to point to its ephemeral presence in Texas should be given no weight.  Indeed, APT was organized in Texas just **5** days before acquiring the patents-in-suit.  Moreover, the office at this address appears to belong to a well-known provider of "virtual office" locations.  Ex. P.  In short, APT's purported presence in this district appears to be a classic case of venue manipulation.  *E.g.*, *Zimmer*, 609 F.3d at 1381.

Second, APT's efforts to point to ARM's Austin and Plano facilities are similarly meritless.  As an initial matter, Austin is in the <u>Western</u> District of Texas.  Notably, this exact attempt to bolster convenience through locations outside of EDTX has again by rejected by the Federal Circuit.  *Acer*, 626 F.3d at 1256 (rejecting attempt to bolster convenience in EDTX by pointing to corporate headquarters of Dell in WDTX).  Moreover, the Austin facility has absolutely no role in this case.  Ex. Q, Larri Decl. ¶¶ 6-9.  Indeed, the accused cores in this case were designed either in Cambridge, UK or Sophia, France.  *Id.*  <u>No accused cores were designed or developed in Austin</u>.  Similarly, the Plano facility that APT points to is actually an office of Keil Software, Inc. and has absolutely nothing to do with the accused cores.  Ex. K, Havens Decl. ¶¶ 4-6.  Thus, these facilities have no relevance to this case.

### b.   The Sources of Proof Are in the Northern District of California.

The vast majority of the available sources of proof are located in or near the Northern District and, as best can be ascertained, next to no sources are located in this District.  This factor heavily favors transfer.  *See Acer*, 626 F.3d at 1256 (ordering transfer because, *inter alia*, "it appears that a significant portion of the evidence will be located within [the transferee forum]").

Sources of proof in this matter will include, but are not limited to, documentary evidence relating to the development, implementation, and marketing of the accused products.  *See Genentech*, 566 F.3d at 1345 ("'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location'") (citations omitted).  As discussed above, Marvell, Xilinx, Creative, Conexant, Zoran, and Mindspeed all have their United States headquarters in California.  Ex. A, Jiang Decl. ¶ 2; Ex. B, James Decl. ¶ 2; Ex. C, Gladden Decl. ¶ 2; Ex. D, Swerdon Decl. ¶ 2; Ex. E, Gallagher Decl. ¶ 2; Ex. F, Kind Decl. ¶ 2.

These California headquarters house the majority of marketing and development documents likely to be relevant to this case.  Ex. A, Jiang Decl. ¶ 6; Ex. B, James Decl. ¶ 6; Ex. C, Gladden Decl. ¶ 6; Ex. D, Swerdon Decl. ¶ 6; Ex. E, Gallagher Decl. ¶ 7; Ex. F, Kind Decl. ¶ 8.

Additional sources of proof will include documents relating to prior art to the asserted patents.  As noted above, numerous pieces of prior art and documents relating thereto are located in the Northern District of California.  Ex. H.  Moreover, documents related to conception and reduction to practice may be located with the inventor in the Northern District.  Ex. J at 1.  Simply stated, almost all of the relevant evidence is located in or near the Northern District.

Finally, any assertion by APT that this factor is rendered superfluous by technological advances should be rejected.  *See TS Tech*, 551 F.3d at 1321.  Given that the location of documents is almost exclusively in the Northern District, this factor weighs in favor of transfer.

### c.   The Availability Of Compulsory Process to Secure the Attendance of Witnesses Strongly Favors Transfer.

"The venue's ability to compel testimony through subpoena power is also an important factor in the § 1404(a) calculus."  *Acer*, 626 F.3d at 1255.  As in *Acer*, the subpoena powers of the Eastern District of Texas "will be of little . . . use" here because next to no known witnesses are located within 100 miles of the Eastern District of Texas.  *Id.*

By comparison, the subpoena power of the Northern District "may be expected to be invaluable."  *Id.*; *Genentech*, 566 F.3d at 1345 ("[T]here is a substantial number of witnesses within the subpoena power of the Northern District . . . and no witness who can be compelled to appear in the Eastern District . . . The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly") (emphasis added).  As discussed above, numerous prior art witnesses and Acacia are within the subpoena power of the Northern District.  *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal.

13

2008) (noting that California district courts enjoy statewide subpoena power).  Just as in

*Genentech*, this favors transfer, and not only slightly.

> **d.  Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive is a Neutral Factor.**

This case is in its infancy.  No substantive motions or hearings have occurred, and trial is

still at least a year away.  Minimal discovery has been exchanged and no depositions have been

taken.  Thus, Defendants have timely filed this motion.  *E.g.*, *Voxpath RS LLC v. LG Elecs.*

*U.S.A., Inc.*, No. 2:10-cv-160-JRG, 2012 WL 194370, at *6 (E.D. Tex. Jan. 23, 2012).

Further, any assertion by APT that its seriatim filing of litigations in this district weighs

against transfer should be rejected.  Indeed, the Federal Circuit has rejected such an argument:

> The district court assigned substantial weight in its analysis to the
> fact that MedIdea had also filed suit against another defendant in
> the same forum . . . <u>[W]e cannot say this negates the significance
> of having trial close to where most of the identified witnesses
> reside and where the other convenience factors clearly favor</u>.

*Zimmer*, 609 F.3d at 1382 (emphasis added).  Moreover, at least two defendants in the

companion cases have already moved to transfer to the Northern District, and this motion is

being filed in five of those follow-on cases.  Thus, the Court should reject any attempt by APT to

rely on its seriatim filings to attempt to defeat this transfer motion.

> 3.  <u>The Relevant Public Interest Factors Heavily Weigh In Favor Of Transfer.</u>

Two of the public factors do not appear to be relevant in this case.  Both the Northern

District and this District are equally familiar with the governing law and there does not appear to

be the prospect for conflicts of law.  The remaining public interest factors strongly favor transfer.

> **a.  The Local Interest In Having Localized Interests Decided at Home Strongly Weighs in Favor of Transfer.**

"[I]f there are significant connections between a particular venue and the events that gave

rise to a suit, this factor should be weighed in that venue's favor."  *In re Hoffmann-LaRoche Inc.*,

587 F.3d 1333, 1338 (Fed. Cir. 2009).  As discussed above, all seven Defendants are headquartered in California, and five of those seven Defendants are headquartered in the Northern District.  Thus, the Northern District has a strong interest in the matter.

In contrast, this District has no local interests affected by this case.  APT's decision to file suit in this District is not an independent factor to be considered in the transfer analysis.  *TS Tech USA*, 551 F.3d at 1320.  Similarly, APT's nominal "place of business" in this District does not provide any meaningful local interest.  *E.g.*, *Network Prot.*, 2012 WL 194382, at *7 ("Even considering [an Acacia subsidiary -plaintiff]'s small and fairly recent operations in Texas, the court concludes that the 'local interest' factor weighs in favor of transfer.").  The only other tie to this District is the alleged sale of accused products within this District.  Such limited connections are insufficient to mandate venue in a particular forum.  *Hoffmann*, 587 F.3d at 1338.

### b.       Considerations of Court Congestion Favor Transfer.

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor."  *Genentech*, 566 F.3d at 1347.  Recent statistics indicate that civil cases in the Northern District reach trial slightly faster than in EDTX.  Ex. R.  Finally, the recent retirements of several Eastern District judges suggest that this patent case with no connection to the Eastern District could strain the already overburdened Eastern District.

## IV.   <u>CONCLUSION</u>

For at least the foregoing reasons, Defendants respectfully request that this Court transfer this case to the Northern District of California.

15

Respectfully submitted,

Dated:  July 27, 2012

By:  */s/ Michael C. Smith*
Michael C. Smith
State Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin
Marshall, Texas 75670
(903) 938-8900 (office)
(972) 767-4620 (fax)

Kevin P. Anderson
kanderson@wileyrein.com
WILEY REIN LLP
1776 K St NW
Washington DC 20006
(202) 719-3586
(202) 719-4049

*Counsel for Defendants-Intervenors ARM Ltd. and
ARM, Inc. and Defendants Xilinx, Inc., Conexant
Systems, Inc., Mindspeed Technologies, Inc.,
Zoran Corporation, and Creative Labs, Inc.*

*/s/ Jerry T. Yen*
Ruffin B. Cordell (State Bar # 04820550)
cordell@fr.com
Joseph Colaianni (pro hac vice)
colaianni@fr.com
Indranil Mukerji (MA Bar # 644059)
mukerji@fr.com
FISH & RICHARDSON P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Jerry T. Yen (CA Bar # 247988)
yen@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

16

James C. Otteson (CA Bar # 157781)
jim@agilityiplaw.com
Philip W. Marsh (CA Bar # 276383)
phil@agilityiplaw.com
Xiang Long (CA Bar # 246629))
longxiang@agilityiplaw.com
Agility IP Law
1900 University Circle, Suite 201
East Palo Alto, CA  94303
Bus:  650-227-4800
Fax:  650-318-3483

ATTORNEYS FOR DEFENDANT
MARVELL SEMICONDUCTOR, INC.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's EM/ECF system per Local Rule CV-5(a)(3) on this 27th day of July 2012.

*/s/ Kevin P. Anderson*
Kevin P. Anderson

## CERTIFICATE OF CONFERENCE

On June 4, 2012, Kevin Anderson, counsel for ARM, conferred, by phone, with David Farnum, counsel for Plaintiff, and Plaintiff is opposed to Defendants' Motion to Transfer Venue.

*/s/ Kevin P. Anderson*
Kevin P. Anderson