**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ADVANCED PROCESSOR TECHNOLOGIES LLC | § § § | |
| v. | § § | Case No. 2:11-CV-19-JRG-RSP |
| ANALOG DEVICES INC., ET AL. | § § | |
| | | |
| ADVANCED PROCESSOR TECHNOLOGIES LLC | § § | |
| v. | § § | Case No. 2:12-CV-155-JRG-RSP |
| MARVELL SEMICONDUCTOR, INC. | § § | |

## MEMORANDUM ORDER

Before the Court is Intervenor ARM, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), as it relates to Defendant Marvell Semiconductor, Inc., filed in Case No. 2:11-CV-19 (Dkt. No. 108, filed July 27, 2012), and ARM's and Marvell's identical Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) filed in Case No. 2:12-CV-155 (Dkt. No. 29, filed July 27, 2012).

This case is one of several related patent infringement cases involving Plaintiff Advanced Processor Technologies LLC ("APT"). Case No. 2:11-CV-19 (hereinafter, "the first case") was filed on January 18, 2011 asserting the '978 and '354 patents against Marvell and other defendants. *See Advanced Processor Techs. LLC v. Analog Devices, Inc., et al.*, Case No. 2:11-CV-19. Case No. 2:12-CV-155 (hereinafter, "the second case") asserting the '207 and '172 patents was filed on March 23, 2012, and only named Marvell as a defendant. Additional cases involving the same patents were filed against the other defendants from the first case (hereinafter, "the second set of cases"), and have been consolidated with the second case for pretrial purposes.

In July 2012, ARM moved to intervene in all of the related cases on behalf of the remaining defendants (except for defendant AMD).  ARM then filed identical motions to transfer venue to the Northern District of California in the first case and the second set of cases, joined by the relevant defendants.[1]  These procedural maneuvers result in the practical effect that Marvell waited for over 17 months after the first case was filed before arguing that the Northern District of California is a clearly more convenient venue for this case than the existing venue.[2]

Movants seek to transfer the first case and the second case to the Northern District of California.  Although there are multiple defendants in the first case, and the second case has been consolidated for pretrial purposes with cases involving other defendants, there does not appear to be a basis at this time for consolidating the various defendants for the purposes of trial. Accordingly, the Court must consider the merits of the transfer motion on an individual defendant basis, at the point in time when the case was filed.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2006).  The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which

---

[1]  "Venue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue."  *Trans World Airlines, Inc. v. C.A.B.*, 339 F.2d 56, 63 (2d Cir. 1964); *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976).

[2]  The present motion to transfer venue is brought solely on convenience grounds under 28 U.S.C. § 1404 because the Eastern District of Texas is an undisputed proper venue for this lawsuit, and in any event, Marvell never challenged venue by filing a timely motion to dismiss under Federal Rule of Civil Procedure 12(b)(3).

transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

### A.      Proper Venue

The parties agree that Northern District of California and the Eastern District of Texas are proper venues for this lawsuit.

### B.      Private Interest Factors

#### 1.      Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

#### Plaintiff APT's Sources of Proof

APT has submitted a declaration by Dooyong Lee, its chief executive officer and a member of its board of directors.  (Lee Decl., Dkt. No. 109-4.)[3]  APT is a Texas LLC with its principal place of business in Frisco, Texas.  (*Id.* at 1.)  APT's parent company, Acacia Research Group LLC, is also a Texas LLC with its principal place of business in Frisco, Texas.  (*Id.* at 1.)  APT maintains its documents and its business records "related to APT's licensing efforts,

---

[3]  Because the motions filed in the first case and the second case are identical, the Court only cites to the docket entries in the first case.

documents relating to APT's corporate formation, and documents relating to the patents owned by APT, among others" at its office in Frisco, Texas.  (*Id.* at 2.)

Movants argue that APT's and Acacia Research Group's publicly traded parent company, Acacia Research Corporation, "has substantial discoverable information concerning the chain of title . . . as well as the licensing and valuation of the patents-in-suit."  (Mot. at 11.)  Acacia Research Corporation has its principal place of business in Newport Beach, California, which is located in the Central District of California.  (Dkt. No. 102-15.)  However, APT's evidence clearly shows that all of the evidence relevant to these topics is maintained by APT's and Acacia Research Group's offices in Frisco, Texas.  (*See* Lee Decl., Dkt. No. 109-4.)

The Court finds that APT's sources of proof are located in the Eastern District of Texas.

**Intervenor ARM's and Defendant Marvell's Sources of Proof**

Intervenor ARM has submitted a declaration by Guy Larri, who was formerly its CPU product manager.  (Larri Decl., Dkt. No. 102-17.)  "ARM's corporate headquarters and primarily [sic] development facility for processor cores is located in Cambridge, United Kingdom."  (*Id.* at 3.)  Other development facilities are located in the United Kingdom and France.  (*Id.*)  ARM also has engineering and product development facilities in Cambridge, UK; Austin, Texas; and Silicon Valley, California.  (*Id.*)  With respect to the accused ARM products, Larri states that "[a]ny specific documentation related to these products would have been authored" in Cambridge, UK or Sophia Antipolis, France.  (*Id.* at 4.)

Marvell has submitted a declaration by Steve Jiang, the director of engineering for its microprocessor department.  (Jiang Decl., Dkt. No. 102-1.)  Marvell is headquartered in Santa Clara, California, where it is incorporated.  (Jiang Decl. at 3.)  The declaration states that "[v]irtually all Marvell business documents and records relating to the research, design,

marketing strategy, and product revenue . . ." for the accused products "are located in Santa Clara in the [Northern District of California] or overseas."  (*Id.* at 2.)

In response, APT argues that movants "not only fail to identify a single employee of ARM with discoverable information in the NDCA, but the supporting declarations confirm that ARM's technical personnel with relevant knowledge are located in either the United Kingdom or France."  (Resp. at 6.)  APT argues that this fact should carry "substantial weight" because ARM itself argued that "the necessary technical information to defend the case is *solely* in ARM's possession – *not* that of the Defendants" in the motion to intervene in this suit.  (*Id.* at 6 (quoting ARM's Mot. to Intervene at 8).)  With respect to Marvell, APT notes that Marvell's position is equivocal – relevant documents are located "at Marvell's headquarters in Santa Clara . . . or overseas."  (Resp. at 7.)

In reply, movants submit a belated second declaration by Mr. Jiang that emphasizes that the "vast majority" of Marvell's documents relevant to this case are located in Santa Clara.  Mr. Jiang explains that he previously stated some evidence is overseas because "a very small portion of evidence is located overseas in China."  (Jiang Supp. Decl. at 2-3, Dkt. No. 114-1.)

Based on the evidence submitted, the Court finds that movants' relevant sources of proof are located in the Northern District of California and in the Europe.  However, the Court observes that the record is entirely devoid of any measure of the relative quantities of proof available at either location.

**Third Party Sources of Proof**

*Inventors*

Inventors Shinichi Yoshioka, Ikuya Kawasaki, Susumu Narita, Saneaki Tarmaki, and Atushi Hasegawa reside in Japan, and any documents they have are located in Japan. (Loudermilk Decl. at 1, Docket No. 109-2.)  Based upon the listing of inventors on the face of

the '207 patent, which was filed in 1999, Rajesh Chopra is believed to be in Sunnyvale, California.

*Prosecuting Attorneys*

Prosecuting attorney Alan Loudermilk has an office in Marshall, Texas and has maintained his files at that location since early 2010.  (Loudermilk Decl. at 1, Docket No. 109-2.)  Attorneys Carl Brundige, David Lee, and Melvin Krauss are all located in Alexandria, Virginia.  (Farnum Decl. at 2-3, Dkt. No. 109-1.)

Movants identify J. Nicholas Gross (a lawyer presently in Berkeley, California), as one of the prosecuting attorneys for the asserted '207 patent.  In response, APT submitted Mr. Loudermik's declaration, which explains how Mr. Gross had no involvement in the prosecution of the '207 patent, and is only listed on the application's power of attorney "as a matter of standard practice because [Gross] and [Loudermilk] shared certain portions of [their] respective patent prosecution practices at that time."  (Loudermilk Supp. Decl. at 3, Dkt. No. 109-3.) Movants have not challenged APT's explanation.

*Prior Art*

Movants argue that "prior art and associated witnesses are predominantly centered in the [Northern District of California.]"  (Mot. at 2 and 11.)  In support of this contention, Movants attached a highlighted listing of prior art references included in Defendants' invalidity contentions where 33 of the 80 references are highlighted.  (Mot. Ex. H, Dkt. No. 102-8.) Movants represent to the Court that each highlighted reference "have inventors or authors located in the Northern District."  (*Id.* at 11.)  Movants also identify MIPS Technologies, Inc. as a designer of "one primary invalidating" reference.  (Mot. at 11.)  MIPS has a primary place of business in the Northern District of California.  (*Id.*)

APT raises several concerns with respect to Movants' identification of prior artisans. First, there is no declaration that identifies who prepared the listing and identified the locations of the authors and inventors.  (Resp. at 11.)  The exhibit itself does not list any of the authors and inventors, and does not list their locations.  (*Id.*)  Given the age of a number of the references, there is no evidence that any of the authors or inventors of the highlighted references "are even still alive, much less whether they currently reside in [the Northern District of California.]"  (*Id.*) APT argues that no weight should be given "to the speculative assertion that any of these prior art witnesses may currently reside in [the Northern District of California.]"  (*Id.* ar 12.)  With respect to MIPS, APT argues that there is "no evidence that MIPS has actual relevant information in [the Northern District of California]," and that the only basis for Movants' argument is a "website printout showing that MIPS has its headquarters in the NDCA and other US offices in Oregon."  (*Id.* at 12.)

Movants offer little in response to APT's concerns other than arguing that APT's "speculation that the prior art somehow have moved away from the Northern District is nonsensical," and that there is no requirement that Movants prognosticate on what "witness MIPS or Sun [Microsystems] might identify in response to a 30(b)(6) notice."  (Reply at 4-5, Dkt. No. 114.)

The Court has reviewed Movants' listing of prior art references.  The 80 references comprise patents, user manuals, and technical articles, dated as early as 1974 and as late as 1994. All but a handful of the highlighted references are U.S. or foreign patents or patent applications. On balance, the Court finds that some weight, but not substantial weight, should be accorded the 33 references.  First, movants have not identified what other relevant evidence may be available from the prior artisans.  As patents and printed publications, their principal evidentiary value lies

in the content of the patents and publications themselves.  This does not appear to be a situation where the authors and inventors may have important evidence to offer that is not reflected in the writings, such as evidence to establish a prior public use or an on-sale bar.

The Court finds that the sources of proof factor does not favor transfer to the Northern District of California.  All of Plaintiff's evidence is located within this district.  Movants evidence is split between the Northern District of California and Europe, where "necessary" technical evidence resides.  Movants fail to provide any indication of how much evidence resides at any of the various locations.  With respect to third party sources of proof, one of the prosecuting attorney's files reside in this district, and none exist in the Northern District of California.  Finally, there is some indication that prior art witnesses reside in the Northern District of California, but there is only speculation as to what relevant evidence these witnesses may possess beyond what is already provided by the prior art patents, patent applications, and printed publications themselves.  Moreover, Movants have chosen not to provide any location information for any of the remaining 47 prior art references, which suggests that third party sources of prior art evidence are more distributed than perhaps is suggested by Movants' highlighted prior art references.

## 2.        Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).  While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012).  "A district court should assess the relevance and materiality of

the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343.  However, there is

no requirement that the movant identify "key witnesses," or show "that the potential witness has

more than relevant and material information . . . ." *Id.* at 1343-44.

### APT's Witnesses

"A majority of APT's Board of Directors, including [Dooyong Lee] (CEO of APT), Mr.

Marvin Key (officer of APT), and Ms. Tisha Stender (officer of APT) work primarily from their

respective offices in the Eastern District of Texas. All of those officers have knowledge of

relevant facts and are potential witnesses in this case." (Lee Decl. at 3, Dkt. No. 109-4.)  "At

least two Acacia employees - Mr. Fahim Aftab (who has technical knowledge relating to the

patents in APT's patent portfolio), and Ms. Annie Le Blanc (who has knowledge of certain

licensing practices and agreements relating to APT's patent portfolio) - are potential witnesses

with knowledge of relevant facts. Both of them work primarily or exclusively from their offices

in the Eastern District of Texas. They also live in Texas." (*Id.* at 4.)  As discussed above, there is

no evidence that any of Acacia Research Corporation's California-based employees are likely

witnesses.

### Intervenor ARM's and Defendant Marvell's Witnesses

ARM's employees with technical knowledge reside exclusively in Europe.  With respect

to "the ARM1136J, ARM11MP, and ARM926EJ-S ARM cores, the individuals with direct

knowledge of the overall functionality of these products would be located in Cambridge." (Larri

Decl. at 5, Dkt. No. 102-17.)  With respect to the "Cortex A9 core, the individuals with direct

knowledge of the overall functionality of these products would be located in Sophia (sic),

France." (*Id.* at 5.)

Marvell has 2,200 employees who work in Santa Clara. (Jiang Decl. 2, Dkt. No. 102-1.)

"The Marvell employees responsible for procuring and licensing the ARM technology work in

Santa Clara . . . ."  (*Id.*)  "The likely Marvell witnesses with the most relevant knowledge concerning the technical design, development, manufacturing, marketing, and sales of the [accused products] are located either at Marvell's headquarters in [Santa Clara] or overseas." (*Id.* at 3.)

In response, APT notes that ARM and Marvell failed to specifically identify a single relevant witness.  (Resp. at 6 and 11.)  In reply, ARM identifies three witnesses in the Northern District of California (Saumil Shah, Christine Cong Tran, and Ehab Youssef) that have "relevant knowledge of the licensing of the accused ARM cores."  (Hodgson Decl. at 4, Dkt. No. 114-6.) Marvell argues that the "[m]icroprocessor cores used in the Marvell Accused Products are designed and developed mostly in the Northern District of California."  (Jiang Supp. Decl. at 3, Dkt. No. 114-1.)  Marvell identifies two employees knowledgeable of "technical aspects of the accused products" (Steve Jiang and Geoffrey Yung), and one familiar with sales and marketing (Jack Kane).

**Third Party Witnesses**

The parties argued the convenience of venue for third party witnesses along with the identification of third party sources of proof.  The Court's analysis and findings with respect to third party sources of proof are also applicable to this convenience factor and are incorporated herein.

The Court finds that the cost of attendance for willing witnesses factor does not favor transfer to the Northern District of California.  All of Plaintiff's party witnesses reside within this district.  Marvell has identified three specific witnesses that reside in the Northern District of California, and suggests that there may be additional unidentified party witnesses.  ARM has identified three witnesses relevant to licensing of its processor cores that are located in the Northern District of California.  Although ARM has taken the position in its motion to intervene

that it alone possesses "necessary" technical information relevant to infringement, ARM has failed to identify any specific technical witnesses. Given that ARM's declarations establish that its technical witnesses reside in Europe, it appears that ARM does not bother specifically identifying relevant technical witnesses because it would show that Movants' witnesses are not concentrated in the Northern District of California. The only prosecuting attorney in either forum is located in the Eastern District. One inventor is located in the Northern District of California. No specific third party prior art witnesses are identified, but for some, the Northern District of California would be more convenient.

### 3.      Availability of Compulsory Process to Secure the Attendance of Witnesses

The vast majority of identified potential witnesses located in the Northern District of California are party witnesses. One inventor may still reside in the Northern District of California. Although movants offer evidence identifying relevant prior art witnesses that is somewhat suspect, it appears that there may be a few witnesses within the Northern District of California's subpoena power. The Court finds that this factor weighs in favor of transfer.

### 4.      All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that this factor weighs strongly against transfer. Although Marvell could have filed a motion to transfer venue on convenience grounds as early as February 2011, Marvell waited until July 2012 (a delay of over 17 months) to join in filing this motion in the 2:11-CV-19 and 2:11-CV-155 cases. Marvell was promptly served shortly after the first APT suit was brought in January 2011, over 17 months before the instant motion was filed. At the time the motion was filed, 2:11-CV-19 was set for trial in July 2013.

At the time these suits were filed, there would have been some judicial economy benefits arising from the Court's handling of other cases involving the same patents. To be clear, this

finding is based solely on the existence of other defendants that did not file motions to transfer, although they have since settled.

## C.    Public Interest Factors

### 1.    Administrative Difficulties Flowing From Court Congestion

The Court finds that this factor is neutral.  Movants argue that at the time of filing of the first case, there were several judicial retirements in the Eastern District of Texas.  However, at the time of filing of the second case, the Marshall vacancy had been filled.  Movants offer that civil cases in general "reach trial slightly faster than in EDTX."  (Mot. at 15.)

### 2.    Local Interest in Having Localized Interests Decided at Home

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."  *In re Hoffman-LaRoche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009.)  Movants argue that APT has no real connection to the Eastern District of Texas because its presence here is a sham, and that the Northern District of California has an overriding local interest in this case given that the movants have their U.S. headquarters there, and employ thousands of employees.

Throughout the briefing, Movants suggest that this Court should view APT's presence in the Eastern District of Texas with suspicion, and disregard evidence that it has a legitimate presence in the district because APT is a non-practicing entity.  As another court has recognized, "many businesses and academic institutions enforce their patent rights through private companies [like APT]; such a business strategy is not nefarious."  *Cradle IP, LLC v. Texas Instruments, Inc.*, Case No. 11-CV-1254-SLR, slip op. (D. Del. February 12, 2013) (Robinson, J.).  Moreover, it would be improper to "treat such non-practicing entities as anything less than holders of constitutionally protected property rights, those rights having been legitimized by the Patent & Trademark Office."  (*Id.*)

The evidence shows that APT was formed in 2010, before this lawsuit was filed, and that APT's employees are residents in the Eastern District of Texas.   APT and Acacia Research Group operate a legitimate patent licensing business.   Movants offer no persuasive evidence to the contrary.   The residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business.

The Northern District of California would also have a legitimate local interest in suits involving their own resident businesses.   However, Movants do not identify any controlling law that requires giving a preference to larger businesses or employers.   Accordingly, this factor is neutral.

**3-4.    Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

These factors are neutral.

**CONCLUSION**

The Court finds that Movants have not established that the Northern District of California is a clearly more convenient forum than the Eastern District of Texas.   Accordingly, **IT IS ORDERED THAT**:

- ARM, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Case No. 2:11-CV-19, Dkt. No. 108), to the extent it relates to Marvell, is **DENIED**; and

- ARM's and Marvell's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Case No. 2:12-CV-155, Dkt. No. 29, filed July 27, 2012) is **DENIED**.

**SIGNED this 19th day of March, 2013.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE